# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,   )
                            )
         Plaintiff,         )
                            )
vs.                         )   NO. CR-18-0096-HE
                            )
SHANE THOMAS YOUNG          )
                            )
         Defendant.         )

## ORDER

Defendant Shane Thomas Young filed two motions to suppress evidence, one seeking to suppress his custodial statements to an FBI agent and the second seeking to suppress all tangible evidence collected against him. A hearing was held on the motions on August 1, 2018. For the reasons stated here and from the bench at the conclusion of the hearing, the court concludes the motions should be denied.

## Motion to Suppress Statements

Defendant seeks to suppress all statements made to FBI Special Agent Kent Brown, alleging that the statements were involuntary and coerced. At the time of the interview/interrogation, defendant had been in Woodward County jail for four days. He was represented by counsel, but counsel was not present during the interview/interrogation. Prior to questioning, Agent Brown provided defendant with a Miranda rights form and explained it. Defendant read and signed the form. He did not request that his counsel be present. The court concludes defendant knowingly waived his Miranda rights and finds that he did not explicitly invoke his right to counsel at any time during questioning.

The court also concludes defendant's statements were not otherwise involuntary. A confession or admission by a defendant may not be used as evidence at a criminal trial unless the statement was made voluntarily. Jackson v. Denno, 378 U.S. 368 (1964). When evaluating the voluntariness of a statement, no single factor is determinative, and the court must evaluate the "totality of the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). The question is whether the defendant's "will has been overborne and his capacity for self-determination critically impaired." *Id.* at 225-26. "The United States Supreme Court has identified a nonexhaustive list of factors for assessing the voluntariness of a statement: the suspect's age, education level, whether the suspect was advised of his or her constitutional rights, the length of his or her detention, the nature of the questioning, and any physical punishment . . . ." Sharp v. Rohling, 793 F.3d 1216, 1233 (10th Cir. 2015) (citations omitted). A promise of leniency is relevant to determining whether a confession was involuntary and, depending on the totality of the circumstances, may render a confession coerced. *Id.* at 1229. Likewise, an officer's lies or misrepresentations to a defendant during interrogation may, but do not necessarily, render a confession coerced. United States v. Lopez, 437 F.3d 1059, 1065 (10th Cir. 2006).

As previously noted by the court at the hearing, certain of the representations made to the defendant by the agent were problematic and create a serious question as to the voluntariness of the statements ultimately made by the defendant. The agent repeatedly made statements to the defendant that he was "on your side" or words to that effect. More significantly, he also told him that he had had discussions with "the judge" about defendant's charges and potential sentence. He advised the defendant that he could

2

"physically buy down the amount of [prison] time" in exchange for answering questions and assisting the agent.

As to the references to the judge, the agent testified at the hearing that he misspoke during the interrogation and intended to reference the Assistant United States Attorney. However, even if that explanation is credited, it does not change the coercive nature of the assertions when viewed from the standpoint of the defendant. Further, the agent's statements that defendant could "buy down" his time by talking, though not promising any particular sentence, qualify as a promise of leniency. The agent did later tell the defendant that he was not making any promises as to a particular sentence or disposition, and the defendant indicated he understood that, but the most explicit of those statements came late in the interrogation after the incriminating statements had been made. In short, there were both false representations and promises of leniency made to the defendant which were coercive in nature under the circumstances.

There are, however, circumstances here indicating the defendant's will was not overborne as to the statements he made. The tenor of the interrogation was friendly throughout. There were no express threats of retribution if he did not talk. The defendant is a middle-aged man with prior exposure to and experience with the criminal justice system. At various times during the interrogation, the defendant acknowledged that he had the option to speak or act or refuse to speak or act. At one point, he made a comment that he wished his lawyers were present, but he did not explicitly ask for them or seek to stop the interrogation, although he knew that he could have done so. The evidence of that includes the fact that, the day before, he did stop an earlier interrogation by a deputy sheriff

3

until his counsel could be present. Further, during the interrogation by the FBI agent, the agent asked defendant to sign a consent to search form as to defendant's phone and the defendant refused to do so. All these factors indicate that the defendant retained the capacity to say "no" when he wanted to and that the agent's comments and surrounding circumstances did not critically impair the defendant's capacity for self-determination.

While the question is close, the court concludes the false statements, promises of leniency, and related circumstances were not so egregious or pervasive as to warrant a conclusion the defendant's statements were involuntary. The defendant's background and his conduct while in custody indicate he retained the capacity to resist the agent's suggestions or questions when he wanted to, and he actually did so at various times. Considering the totality of the circumstances, the court concludes the defendant's capacity for self-determination was not impacted to an extent sufficient to warrant exclusion of the statements.

## Motion to Suppress Tangible Evidence

Defendant also seeks to suppress all tangible evidence found in the car he was driving and in the area where he was apprehended. Just after midnight, a Woodward County sheriff's deputy initiated a traffic stop after observing defendant driving erratically down the road. Defendant did not stop, a chase ensued, and defendant eventually abandoned the vehicle in the front yard of a residence. He fled on foot, scaled a fence, and was arrested by the deputy in a wooded area behind the residence. A search of the vehicle turned up a small amount of marijuana, and a search of the yard near the fence uncovered a small amount of methamphetamine in a small black Beats headphone case. Later that

4

day, during daylight hours, a second search was conducted of the area through which defendant had fled. That search yielded a small black bag containing approximately 93 grams of methamphetamine.

Defendant argues the search of the vehicle was not justified as incident to his arrest, and was an impermissible "general" search, because he was not near the vehicle when the deputy caught and arrested him. He also argues a search of the surrounding area would not have occurred but for the search of the car and that items found around the fence or in the neighbor's yard are therefore "fruit of the poisonous tree."

The court is not bound by the basis for search stated by the deputy in his incident report and must determine the legality of the search based on any legal theory supported by the facts. "The reasonableness of a search depends on the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations." Grady v. North Carolina, 575 U.S. ----, 135 S. Ct. 1368, 1371 (2015). Multiple grounds exist for concluding the searches were reasonable and it is therefore unnecessary to resolve whether they were justified as incident to defendant's arrest.

The evidence established that defendant abandoned the vehicle he was driving. "[T]he Fourth Amendment allows for warrantless search and seizure of abandoned property," so long as the abandonment is voluntary and does not result from illegal police conduct. United States v. Flynn, 309 F.3d 736, 738 (10th Cir. 2002). A defendant no longer has a reasonable expectation of privacy in a vehicle that is abandoned when the defendant flees from police on foot. United States v. Vasquez, 635 F.3d 889, 894 (7th Cir. 2011).

5

Here, defendant's abandonment was not the result of police misconduct, as the officer's pursuit of defendant and effort to stop his car was justified based on the officer's observations of defendant's driving.

The officer's observations also provided probable cause for the officer to search the car under the "automobile exception" regardless of whether he was eventually arrested. Under that exception, police officers may search a vehicle without a warrant where they have probable cause to believe it contains contraband or evidence of a crime. United States v. Nicholson, 17 F.3d 1294, 1297 (10th Cir. 1994). Here, the officer observed the defendant swerve and "nearly leave the road" and swerve "left of the center of the roadway and back to the right edge of the road several times." Such observations would give the officer probable cause to search the vehicle for evidence that alcohol, or some other basis for a driving while impaired offense, was present.

Finally, the search of the car was justified on the basis of inevitable discovery. Nix v. Williams, 467 U.S. 431 (1984). The deputy was confronted with an abandoned vehicle (or, at the very least, with one to which the defendant would not be returning soon), called a wrecker, and initiated the process that would have resulted in an inventory search of the car. In the course of that inventory, the marijuana in the car would inevitably have been found.

While the search of the car was proper, the court concludes it does not ultimately matter. The evidence that is material to this case is the meth found near the fence and in the neighbor's yard, not the marijuana found in the car. The search of the yard and fence area, where the first object containing meth was found, was not the result of anything found

in the car. It would have occurred in any event, as it was necessary to recover defendant's personal belongings which the deputy knew defendant had lost during his attempt to evade capture. The officer also believed defendant had "ditched" something as he ran, and he specifically asked if the other officers had recovered defendants hat, shoe, and/or other items that were lost during the chase. The first container of meth was found next to defendant's hat and shoe. As to the second and larger amount of meth found in the neighbor's yard later in the day, the search for it was the result of the first container having been located, not the contents of the car, and, in any event, defendant lacks standing to object to the search of property in which he had no interest.

There is no basis for suppressing the searches of either the car or the broader area where the meth was found.

Defendant's Motion to Suppress Statements [Doc. # 26] and Motion to Suppress [Doc. # 27] are **DENIED.**

**IT IS SO ORDERED**.

Dated this 3rd day of August, 2018.

JOE HEATON
CHIEF U.S. DISTRICT JUDGE